UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW
YORK,

                         Plaintiff,                      **ORDER**

       -against-                   **23-CV-8883 (VEC) (JW)**

Y.F., *by and through his Parents*, C.F. and
M.F., C.F. *individually and on behalf of her
son*, Y.F., and M.F., *individually and on
behalf of his son*, Y.F.,

                         Defendants.
------------------------------------------------------------------X

**JENNIFER E. WILLIS, United States Magistrate Judge:**

      The Court is in receipt of Defendants Y.F., by and through his Parents, Defendants C.F. and M.F.'s (collectively, "Defendants") motion to compel and letter request to reopen and extend discovery. Dkt. Nos. 29–31, 39.

      After the Board of Education of the City School District of the City of New York ("Plaintiff") failed to provide Defendant Y.F. with a Free Appropriate Public Education (FAPE), they attended a school by the name of Reach for the Stars (RFTS). Dkt. No. 31 at 1. At issue in the instant action is "judicial review of a June 8, 2023 appellate administrative decision of a State Review Officer ("SRO") in the New York State Education Department Office of State Review (the "SRO Decision")" ordering Plaintiff to reimburse Defendants in the amount of $80,000 and "pay $262,587.50 directly to RFTS" for the 2021–2022 school year. Dkt. No. 1 at ¶ 4. Plaintiff notes

that it did not challenge at the SRO level the $80,000 reimbursement to Defendants.

Id.

After attempts to resolve discovery disputes, Defendants now seek to compel Plaintiff to produce the following information:

> all "settlements, resolution agreements, IHO decisions and orders, or SRO decisions or orders, providing in whole or in part for Applied Behavior Analysis Services, or Board Certified Behavior Analyst or BCBA services or Autism services, or 1:1 services, for a child with autism or ASD, that provides a rate per hour, including but not limited to "market rate," "enhanced market rate," "reasonable market rate," or any specifically identified dollar figure as an hourly rate or a limiter to an hourly rate." Defendants further limited the requested documents and information to three specific school years, the year before the school year at issue, 2020-21, the school year at issue, 2021-22, and a year after the school year at issue, 2022-23.

Dkt. No. 40 at 2. Defendants also seek to compel Plaintiff to produce a 30(b)(6) deposition witness, who must have sufficient knowledge of the contents of the documents and data requested. Id. at 1.

The Federal Rules of Civil Procedure provide that the general scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Information is "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Virtu Fin. Inc. v. AXIS

2

Ins. Co., No. 20CV6293 (GBD) (KHP), 2021 WL 3862857, at *2 (S.D.N.Y. Aug. 30, 2021) (citing Fed. R. Evid. 401.).

## A. Relevance

Plaintiff argues that "Defendants' request for the production of all implementation orders relating to ABA and BCBA services is not relevant" because orders regarding other students are case specific and cannot show that the RFTS services to Defendant Y.F. were appropriately priced. Dkt. No. 36 at 4. Plaintiff also argues the implementation orders would provide no insight into the direct issue on appeal: that RFTS changed it billing model resulting in an increase from "$93,000 per year for the 2013-14 school year to $342,587.50 per year for the 2021-22 school year." Id.

Defendants argue that, given Plaintiff's contention that RFTS rates "cannot be compared to those charged to other students by other providers or schools," "establishing that Plaintiff routinely pays other providers and schools the same hourly rate for similar services is highly relevant." Dkt. No. 31 at 2; Dkt. No. 40 at 11–12. Defendants state, "[o]ne is hard pressed to think of any more relevant data than the rates paid by the DOE on a consistent basis for the services provided to this student and other student[s] like Y.F." Dkt. No. 31 at 7.

Considering the rates charged for students with Individual Education Plans are just that—individual, the rates paid by Plaintiff to other schools for other students with Autism are not a perfect indication of whether RFTS rates for Defendant Y.F. are reasonable. However, because the standard for relevant

information is whether it has "any tendency to make a fact more or less probable than it would be without the evidence," the rates Plaintiff pays for other students with Autism are indeed relevant here.

### B. Burden and Proportionality

Plaintiff asserts that it "does not keep a searchable database of IHO and SRO decisions that can be canvassed for decisions detailing what was ordered for ABA and BCBA service rates." Dkt. No 36 at 5. Plaintiff also notes that over 6,000 decisions were issued in the 2022–2023 school year alone, and, because of the lack of a searchable database, it would be forced to manually review, redact, and produce such decisions foreach of the years requested. Id. Plaintiff then states that it would have to send a notice to the parents of any children whose decisions were produced if any personal identifying information was included. Id. at 5–6.

Plaintiff also argues that because the New York State Office of State Review publishes every SRO decision issued on its website in a searchable format and because the State Education Department has a similar database for IHO decisions, Defendants have access to most of the information they are seeking. Dkt. No. 36 at 6. Plaintiff does concede that the IHO database is incomplete. Id.

Plaintiff contends that, when considering the above, asking them to recreate both databases manually would impose an undue burden and is disproportionate to the needs of this case. Dkt. No. 36 at 6.

Defendants argue that conducting a manual review is unnecessary, and Plaintiff can utilize search terms to narrow the search as the needs of this case focuses

4

on students with Autism. Dkt. No. 40 at 9–11. Defendants then suggest that "both or either a subject matter representative or an electronically stored information (ESI) representative would be able to quickly isolate the requested data in order to reduce the universe for a more particularized search and/or to an arguably fair and reasonable produceable number of decisions." Dkt. No. 40 at 11.

Defendants also argue that according to "IDEA's regulations, see 34 C.F.R. § 300.513, the local education agency (LEA), here the [B]OE, is required to transmit the impartial hearing decisions after appropriate redactions to the State, 34 C.F.R. § 300.513(d)(1), and make the decisions available to the public." Dkt. No. 40 at 8. Defendants therefore argue that they "could legitimately demand as members of the public all the due process decisions, fully redacted, for each of the targeted years," but instead requested only those sufficient to show the rates paid to "providers and schools that provided ABA and BCBA services to children with Autism for school years 2020-2021, 2021-2022, and 2022-2023." Id.

The Federal Rules of Civil Procedure provide "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that… the discovery sought… can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(c)(i). Courts in this District have also held that "[i]t is well established that discovery need not be required of documents of public record which are equally accessible to all parties." Twelve Sixty LLC v. Extreme Music Libr. Ltd.,

5

No. 17-CV-1479 (PAC), 2020 WL 2749708, at *5 (S.D.N.Y. May 26, 2020) (citing S.E.C. v. Samuel H. Sloan & Co., 369 F. Supp. 994, 995 (S.D.N.Y. 1973)).

Here, Defendants seemingly confuse any requirement by Plaintiff to make the records public, with an entitlement to force Plaintiff to compile specifically relevant records to this case and then produce them. Moreover, because the decisions sought are publicly available, Defendants are equally capable of compiling the information they seek. Therefore, the Defendants' motion to compel is **DENIED.**

### C. 30(b)(6) Witness

Given the Court's denial of Defendants' motion to compel Plaintiff to compile and produce the requested data, Plaintiff is incapable of preparing and producing a witness with sufficient knowledge of the uncompiled requested data. Therefore, Defendants motion to compel a 30(b)(6) witness on the requested data is also **DENIED.**

### D. Request to Extend Discovery

The Parties request to reopen and/or extend discovery is **GRANTED.** In accordance with this order, the Parties shall submit an amended case management plan **by February 7, 2025.**

**The Clerk of Court is respectfully requested to close Dkt. Nos. 29, 39.**

SO ORDERED.

DATED:   New York, New York
         January 31, 2025

*Jennifer E. Willis*
JENNIFER E. WILLIS
United States Magistrate Judge

6