USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Plaintiff,

-against-

Y.F., by and through his Parents, C.F. and M.F.; C.F., individually and on behalf of her son, Y.F.; and M.F., individually and on behalf of his son, Y.F.,

Defendants.

23-CV-8883 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

This is a rather odd motion for reconsideration of a discovery order brought by the prevailing party pursuant to Federal Rule of Civil Procedure 72(a). *See* Dkts. 77–78. Defendants and non-parties Reach for the Stars Learning and Discovering LLC ("RFTS-LD") and Reach for the Stars Learning Center ("RFTS-LC") (collectively, "RFTS") (Defendants and RFTS collectively, "Respondents") have additionally requested a ruling resolving the question of whether the financial records sought by the Board of Education of the City of New York ("BOE") may be received by this Court as "additional evidence" under 20 U.S.C. § 1415(i)(2)(C)(ii). *See* Dkt. 81. For the reasons that follow, Respondents' requested relief pertaining to the question of "additional evidence" is DENIED, and their objections to the discovery order are OVERRULED.

**BACKGROUND**

The Court assumes the Parties' familiarity with the facts of this case, and so restates them only briefly. This is an action brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* seeking judicial review of an administrative decision ordering BOE to fund the cost of Defendant Y.F.'s education at RFTS-LC in the amount of $342,587.50 for the 2021-2022 school year. Compl., Dkt. 1 ¶¶ 1, 3.

In 2021, Defendants C.F. and M.F., Y.F.'s parents, rejected BOE's proposed Individualized Education Program ("IEP") for the 2021-2022 school year and continued to enroll Y.F. at RFTS-LC. *Id.* ¶ 13. Y.F.'s parents then initiated an impartial hearing under IDEA, which resulted in an Independent Hearing Officer ("IHO") concluding that BOE failed to provide Y.F. a free appropriate public education ("FAPE") but also finding that the costs sought by Defendants were excessive. *Id.* ¶¶ 14–19.[1] The Parties then cross-appealed to a State Review Officer ("SRO"), who concluded that the record was inconclusive as to the reasonableness of costs, but nevertheless ordered BOE to pay the full amount sought by Defendants. *Id.* ¶¶ 31–33. BOE contends that the SRO erred as a matter of law by ordering payment of unreasonable costs, and this litigation followed. *See id.* ¶¶ 35–47.

On February 12, 2026, BOE issued non-party subpoenas to RFTS seeking broad financial information regarding RFTS, in addition to information related specifically to services provided to Y.F. *See* Dkt. 66 at 2. Respondents objected to the subpoenas as, *inter alia*, overbroad and unduly burdensome, generally maintaining that the school's financial information was not relevant unless it pertained specifically to the educational services provided to Y.F. *See* Dkt. 76 at 2–3; *see also generally* Dkt. 82 ("Aug. 5, 2026, Tr.").

[1] Y.F. has been enrolled at RFTS-LC for more than ten years; during that time, the cost has skyrocketed from roughly $90,000 per year to nearly $350,000 per year. *Id.* ¶ 32.

On August 5, 2026, the Parties appeared before Magistrate Judge Willis concerning the objections to the subpoenas, among other discovery disputes. At the conference, Judge Willis agreed with Respondents that the subpoenas as written were "overly broad and disproportionate to the needs of the case" and ruled that re-issued subpoenas should "focus[] on the school year in question, which is 2021-2022" and "solely on payroll records and bank statements." Aug. 5, 2026, Tr. at 52:11-17. Judge Willis further indicated that she would authorize BOE to issue new subpoenas, but that such subpoenas "must be narrowed in the ways that we[re] discussed in court." *Id.* at 54:11-13. Thereafter, Judge Willis entered an order memorializing the conference and granting BOE leave to "serve a more narrowed [*sic*] subpoena that focuses solely on the production of payroll records and bank statements for the 2021-2022 school year." Dkt. 77 at 1. That order noted that the rationale had been "stated more fully on the record." *Id.*

This motion by Respondents for reconsideration followed. *See* Dkt. 78 ("Def. Mem."). In their motion, Respondents ask this Court to limit the permissible discovery of payroll and bank records authorized by Judge Willis to those that reflect services provided to Y.F. *See id.* at 14–16. Respondents further requested, and were permitted, to brief the question of whether such evidence could be reviewed at all by this Court as "additional evidence" under 20 U.S.C. § 1415(i)(2)(C)(ii). *See id.* at 18–20; *see also* Dkt. 81 ("Def. Evid. Mem."). In that briefing, Respondents move this Court to deny all discovery of payroll records and bank statements. *See generally* Dkt. 81. The BOE opposed both motions. *See* Dkt. 86 ("Opp. Mem.").

**DISCUSSION**

"Under Rule 72 of the Federal Rules of Civil Procedure, 'when a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide,' the district court 'must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*,

Nos. 18-CV-1781 (PGG) (BCM), 18-CV-7692 (PGG) (BCM), 2022 WL 153183, at *2 (S.D.N.Y. Jan. 18, 2022) (alteration omitted). "Orders involving discovery are considered nondispositive." *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, 571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021). "'An order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed' and is 'contrary to law if it fails to apply or misapplies relevant statutes, case law[,] or rules of procedure.'" *Id.* (quoting *Blackrock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-CV-10067 (KPF) (SN), 2018 WL 3863447, at *3 (S.D.N.Y. Aug. 13, 2018)) (internal quotation marks omitted). Because "[a] magistrate judge is best qualified 'to judge the entire atmosphere of the discovery process,'" her "rulings on discovery matters are entitled to substantial deference." *U2 Home Entm't Inc. v. Hong Wei Int'l Trading Inc.*, No. 04-CV-6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007). The party objecting to a magistrate judge's order carries a "heavy burden" of showing that the order is clearly erroneous or contrary to law. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 404 (S.D.N.Y. 2020).

## I. The Court May Consider Additional Evidence on Review

As a threshold matter, the Court will first determine whether it may consider the financial records currently sought by Plaintiff, namely payroll and bank statements, as "additional evidence" as defined in 20 U.S.C. § 1415(i)(2)(C)(ii) in reviewing the administrative decision at issue. The Court concludes that it can do so.

Section 1415(i)(2)(C) of the IDEA provides that "the [district] court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and, (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). While some district courts in

this Circuit have considered the issue of when "additional evidence" is appropriate, the Second Circuit has not ruled on the issue. *See Eschenasy v. N.Y.C. Dep't of Educ.*, 604 F. Supp. 2d 639, 649 (S.D.N.Y. 2009). Under the "additional evidence" provision of the IDEA, "[t]he taking of additional evidence is a matter . . . left to the discretion of the trial court." *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 751 F. Supp. 2d 552, 554 n.1 (S.D.N.Y. 2010) (*quoting Lillbask ex rel. Mauclaire v. Sergi*, 193 F. Supp. 2d 503, 506 (D. Conn. 2002)). As the court in *G.B.* observed, "courts generally accept evidence that was not withheld in bad faith, is relevant, and does not change the administrative review into a trial *de novo*." *Id.* (citing *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380 (2d Cir. 2003) ("Federal courts reviewing administrative determinations under IDEA must tak[e] into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties"); *Town of Burlington v. Dep't of Educ. of Mass.*, 736 F.2d 773, 790–91 (1st Cir. 1984)).

As Respondents acknowledge, tuition reimbursement, which is the underlying issue in this case, is equitable relief for which the Court "must consider all relevant factors, including . . . [whether] the cost of the private education was unreasonable." *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 16 (1993). Payroll records and bank statements pertaining to the services provided to Y.F. and the expenditures authorized by his school in furtherance of his education are relevant in determining whether the overall cost of his education as charged to his parents was reasonable.[2] In other words, because the Court has been tasked with determining whether the amount being charged for Y.F.'s education was reasonable, information such as payroll, compensation of educational professionals, and other overhead charges incurred by the school in

[2] This is especially true when the reasonableness of the cost of Y.F.'s education, approximately $342,587.50, was questioned by both the IHO and the SRO. *See, e.g.*, Compl. ¶¶ 19, 32.

providing these services may inform this Court's opinion on whether the amount ultimately charged to Y.F.'s parents was reasonable. *See Mr. & Mrs. A. ex rel. D.A. v. N.Y.C. Dep't of Educ.*, 769 F. Supp. 2d 403, 430 (S.D.N.Y. 2011) (court can assess whether "tuition charged was unreasonable in light of the education and related services the [s]chool provided.").

The Parties and the Undersigned discussed discovery of this type of additional evidence at the conference that took place on January 12, 2024. Specifically, in discussing what discovery Plaintiff sought beyond the administrative record, the BOE stated that it contemplated "engaging in [] some nonparty discovery" from RFTS because of "concerns about how the money was being paid for the students' services and how the students' tuition is being allocated at the school." Dkt. 88 ("Jan. 12, 2024, Tr.") at 3:17-20.[3] The Court then ordered appropriate deadlines so the Parties could engage in this limited discovery to supplement the administrative record. *See id.* at 9:9-24.[4] Accordingly, while the Court did not explicitly rule on whether such evidence would be appropriately considered pursuant to statute, it did authorize limited discovery understanding that Plaintiff intended to take party and nonparty discovery going to: (1) comparable fees; and (2) financial information from RFTS going to the reasonableness of the charges for Y.F.'s education. Payroll and bank record information, as authorized and limited by Judge Willis, falls squarely within the scope of the discovery that was originally contemplated by the Parties and this Court.

Because the Court concludes that it has the statutory authority to consider this additional evidence, nothing further is required. The Court, however, thinks it worthwhile it address some

---

[3] The Court and the Parties also discussed discovery relating to comparable rates for the types of services Y.F. received as part of the reasonableness analysis, although that is not relevant to resolving the present objections. *See* Jan. 12, 2024, Tr. at 3:13-16.

[4] Counsel for Defendants stated that she did not "disagree" when the Court remarked that it seemed "like third-party discovery [from RFTS] is going to be inevitable in this case." *Id.* at 6:14-15, 18.

of Respondents' arguments to the contrary. First, Respondents argue that this evidence would be repetitive of what the administrative record already contains. Def. Evid. Mem. at 18–19. Respondents acknowledge, however, that at the impartial hearing, Y.F.'s parents provided only the annual salary of the "provider[s] who served Y.F." *Id.* at 18.[5] The discovery authorized by Judge Willis is broader than just the providers who served Y.F. directly; indeed, Judge Willis authorized payroll information concerning individuals whose cost would go to the overhead of educating Y.F., not just the professionals who served him directly. *See* Aug. 5, 2026, Tr. at 17:4-12 (discussing "custodial staff and … food preparation" as relevant to the costs of educating Y.F.). Thus, this information would not be cumulative.

Second, as Respondents also acknowledge, the key issue in dispute here is whether "the rate charged was unreasonable." Def. Evid. Mem. at 21. Respondents argue that the reasonableness of fees charged can only be determined through a comparison between the fees charged and charges for comparable services in this area or by "correlat[ion] to the amount of 1:1 ABA services the student required to receive a FAPE." *See id.* at 22–23. The Court disagrees. The Court can and will make an independent inquiry, based on the complete record before it, whether the fees charged were reasonable given the services provided. *Mr. & Mrs. A. ex rel. D.A.*, 769 F. Supp. at 430. One aspect of evaluating reasonableness in this case requires the Court to look at the fees that were charged and assess them against the services Y.F. received and what it cost the school to provide those services. The Court is not limited to drawing

[5] BOE additionally notes that the salary information that was provided to the IHO was limited to "the individuals providing applied behavior analysis ("ABA") services to Y.F., as well as that same information for the 'related service providers.'" Opp. Mem. at 9–10. Accordingly, it appears that the limited information in the administrative record, which the SRO found was inadequate to conclude that the costs were unreasonable, does not capture the costs of all the individuals who provided educational services to Y.F., let alone the costs of indirect services.

comparisons across educational institutions, although that, too, may aid the Court in its determination of reasonableness.

Finally, Respondents argue that Plaintiff should not be allowed to pursue the evidence it is seeking here because it essentially waived the right to do so in the administrative hearings below. Plaintiff's actions, however, make clear that it has never abandoned the issue of reasonableness of cost throughout these proceedings. As Plaintiff notes, in the first instance, it sought records to make its case for unreasonableness before the IHO; the IHO never permitted that discovery to go forward, requesting only limited evidence from Y.F.'s parents. Opp. Mem. at 9–10. Nonetheless, the IHO concluded that the cost of Y.F.'s education was unreasonable, a finding in Plaintiff's favor that it was not required, or expected, to appeal. *Id.* at 9, 11 (citing *Phillips v. Aviles-Ramos*, 23-CV-2140, 2025 WL 1547490, at *2 (S.D.N.Y. May 29, 2025)). Additionally, while the SRO appeal resulted in that particular finding being overturned, the SRO did not conclude that the costs were reasonable. Instead, the SRO concluded only that the record was insufficient to determine the reasonableness of the cost. Opp. Mem. at 12. That is the precise issue that Plaintiff has brought to this Court. *See* Compl. ¶ 38 (bringing claim based on SRO conclusion as to unreasonable costs). Accordingly, the argument that Plaintiff waived its ability to pursue this evidence through inaction is belied by the record.

In sum, the Court has statutory authority to consider additional evidence in determining whether the fees charged for Y.F.'s education were reasonable. Respondents' requested relief as it pertains to the question of additional evidence is, therefore, DENIED.[6]

[6] For the avoidance of doubt, the Court has considered the balance of Respondents' arguments going to, *inter alia*, the issue of deference, the pendency counterclaim, and the issue of the parents' contract, and finds it unnecessary to reach those issues to resolve the present objections. To be clear, were the Court to address these arguments more fulsomely, they would not change the outcome of the ruling issued herein.

## II. The Objections to the Discovery Order Are Overruled

Respondents separately ask the Court to modify Judge Willis's order granting BOE leave to serve "a more narrowed [*sic*] subpoena that focuses solely on the production of payroll records and bank statements for the 2021-2022 school year." Dkt. 77 at 1. Specifically, Respondents request the Court to limit any BOE subpoena to information relating to "personnel who directly or indirectly provided support and assistance to Y.F." Def. Mem. at 12.

Although the precise scope of the written order could be clearer, it specifically references the oral discussion that occurred on August 5, 2026. Dkt. 77 at 1. During the August 5 hearing, Judge Willis clearly indicated that the original subpoena was "unbelievably overly broad," Aug. 5, 2026, Tr. at 13:25, and stated several times that an appropriately narrowed subpoena would focus on information relating to individuals "providing support and assistance for Y.F.," *id.* at 17:12-13.

It seems clear that Judge Willis intended to incorporate the limitations discussed during the conference into her final order, meaning that the Plaintiff was given leave to serve subpoenas that seek information pertaining to Y.F. during the 2021-2022 school year. In other words, and for the sake of clarity, Plaintiff is permitted to serve subpoenas seeking payroll and bank record information from the RFTS entities for the 2021-2022 school year so long as that payroll and bank record information pertains to individuals, expenditures, or transactions that relate to educational services provided to Y.F.[7] As discussed above, *supra* § I, the Court agrees that such information is relevant to the issue raised in this case: whether the fees charged for Y.F.'s education were unreasonable. The Court also agrees that the discovery permitted by Judge

---

[7] Such individuals, expenditures, and transactions include those relating to both direct and indirect services provided to Y.F., such as, *e.g.*, "custodial staff" and individuals involved in "food preparation," to the extent such records reflect "services that need to be paid" in furtherance of Y.F.'s education. *See* Aug. 5, 2026, Tr. at 17:1-16.

Willis's order would not be overly burdensome to Respondents or be disproportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). If Plaintiff receives materials through its subpoena that indicate broader requests are justified, it may pursue that discovery.[8]

Because the limitations stated above were pretty clearly intended to be a part of Judge Willis's order, *see* Dkt. 77, Respondents' objections to the order are OVERRULED.

**CONCLUSION**

For the foregoing reasons, Defendants' and non-parties' requested relief as to the issue of "additional evidence" is DENIED and their objections to Magistrate Judge Willis's order, *see* Dkt. 77, are OVERRULED, subject to the clarification of her order contained in this Order. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 78.

**SO ORDERED.**

**Date: October 26, 2026**
**New York, New York**

Valerie Caproni

**VALERIE CAPRONI**
**United States District Judge**

[8] Any such requests for additional discovery could, of course, be challenged by Defendants or any affected third party, if appropriate.